UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.   6:15-cv-1441-Orl-40TBS

T. STEVEN MILLER, an individual;
HIGHWINDS CAPITAL, INC., a Florida
Corporation; and HIGHWINDS NETWORK
GROUP, INC., a Florida Corporation,

*Plaintiffs*,

vs.

SCOTTSDALE INSURANCE COMPANY and
AXIS INSURANCE COMPANY,

*Defendants*.
_____/

# COMPLAINT

Plaintiffs, T. Steven Miller ("Miller"), Highwinds Capital, Inc. ("Highwinds"), a Florida corporation, and Highwinds Network Group, Inc. ("HNG"), a Florida corporation (Miller, Highwinds, and HNG are collectively referred to as the "Plaintiffs") hereby file this Complaint against Scottsdale Insurance Company ("Scottsdale") and against AXIS Insurance Company ("AXIS"), and in support respectfully show the Court, as follows:

## NATURE OF ACTION

1.      This is an action seeking Declaratory Relief, pursuant to 28 U.S.C. §2201, to determine the parties' rights and obligations pursuant to an insurance policy issued by Scottsdale and an insurance policy issued by AXIS, and for attorneys' fees, and other appropriate relief against Scottsdale and AXIS.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1332, 2201, and 2202.  Complete diversity of citizenship exists between the Plaintiffs and the Defendants, and the amount in controversy exceeds $75,000 (Seventy-Five Thousand Dollar and No/100), exclusive of interest and costs.

3.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391. Scottsdale's policy of insurance described below was issued and delivered by Scottsdale to Highwinds in Orange County, Florida, AXIS's policy of insurance described below was issued and delivered by AXIS to Highwinds in Orange County, Florida, and a substantial part of the events giving rise to this action occurred in the Middle District of Florida.

## THE PARTIES

4.      Highwinds is now, and at all times referenced herein has been, a Florida corporation with its principal place of business in Winter Park, Orange County, Florida.

5.      Scottsdale was licensed to issue a Business and Management Indemnity Policy No. EKS3035226 to Highwinds, with a Policy Period from 3/22/2011 to 3/22/2012 (the "Scottsdale Policy"), under which Highwinds is an "Insured." The issuance and delivery of the Scottsdale Policy occurred in Winter Park, Orange County, Florida.

6.      AXIS was licensed to issue an excess indemnity policy No. MBN736326/01/2011 to Highwinds, with a Policy Period from 3/22/11 to 3/22/12 (the "AXIS Policy"), under which Highwinds is an "Insured." The issuance and delivery of the AXIS Policy occurred in Winter Park, Florida.

7.       Miller, also referred to in the Benowitz Lawsuit (defined below) as "Steve Miller," is now, and at all times referenced herein has been, an individual residing in the Middle

District of Florida, and the Chief Executive Officer of Highwinds. Miller is an "Insured" and "Management Insured" as defined in the Scottsdale Policy and for purposes of the AXIS Policy, and is otherwise entitled to insurance coverage under the Scottsdale Policy and under the AXIS Policy as an insured.

8. HNG is now, and all times referenced herein has been, a Florida corporation with its principal place of business in Winter Park, Florida. HNG is included within the definition of a "Subsidiary" under the Scottsdale Policy and for purposes of the AXIS Policy, and is an "Insured" and otherwise entitled to insurance coverage under the Scottsdale Policy and under the AXIS Policy as an insured.

9. Scottsdale is a subsidiary of Nationwide Mutual Insurance Company, organized under the laws of Ohio with its principal place of business in Ohio. Scottsdale is an insurance carrier which regularly transacts business in the State of Florida, including, within the Middle District of Florida. Scottsdale can be served with process by service on the Chief Financial Officer of Florida. Scottsdale is defined as the "Insurer" in the Scottsdale Policy.

10. AXIS is a subsidiary of AXIS Capital Holdings Limited, and domiciled in Chicago, Cook County, Illinois. AXIS is an insurance carrier authorized to do business in the State of Florida, including, within the Middle District of Florida. AXIS can be served with process by service on the Chief Financial Officer of Florida. AXIS is defined as the "Insurer" in the AXIS Policy.

## THE SCOTTSDALE POLICY

11. The Scottsdale Policy is a claims-made and reported policy which contains the following coverage sections: (1) Employment Practices (the "EP Coverage Section"); and (2) Management Insureds and Company Coverage Section (the "MIC Coverage Section"). A true

and correct copy of the Scottsdale Policy is attached as Exhibit A and incorporated herein by reference.

12. Highwinds is defined as both the "Company" and the "Parent Company" in the Scottsdale Policy.

13. HNG is a "Subsidiary" of the "Company" as defined in the Scottsdale Policy, and is an Insured as defined in the Scottsdale Policy.

14. Miller is, and was at all relevant times herein, a "Director and Officer" of the "Company" as those terms are defined in the Scottsdale Policy.

15. Section B.6. of the MIC Coverage Section of the Scottsdale Policy defines the "Insured" to mean the "Company" and the "Management Insureds".

16. Miller is a "Management Insured" as defined in the Scottsdale Policy, and is therefore an Insured under the Scottsdale Policy.

17. Section A. 1. of the Scottsdale Policy's MIC Coverage Section expressly and unambiguously provides:

    A.    INSURING CLAUSES

        1.    The **Insurer** shall pay the **Loss** of the **Management Insureds** for which the **Management Insureds** are not indemnified by the **Company** and which the **Management Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Management Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Ac**t taking place prior to the end of the **Policy Period.**

18. Section B. 1. of the Scottsdale Policy's MIC Coverage Section expressly and unambiguously defines, in relevant part, the term "Claim" to mean:

    B.    DEFINITIONS

        1.    **Claim** means:
            a.    a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

            b.    a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading . . . .

19. Section B.3. of the Definitions section under the Scottsdale Policy's MIC Coverage Section expressly and unambiguously defines, in relevant part, the term "Costs, Charges and Expenses" to mean:

        3.    **Costs, Charges and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims and the premium for appeal. . . .

20. Section B.8. of the Scottsdale Policy's MIC Coverage Section expressly and unambiguously defines, in relevant part, the term "Loss" to mean:

        8.    **Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Management Insureds** under Clauses 1. or 2. or the Company under Insuring Clause 3.

21. Section A. 1. of the Insuring Clauses section under the Scottsdale Policy's EP Coverage Section expressly and unambiguously provides:

    A.    INSURING CLAUSES

        1.    Employee Insuring Clause

    **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** . . . .

22. Plaintiffs have fully complied with all conditions precedent and other requirements for insurance coverage under the Scottsdale Policy.

5

## THE AXIS POLICY

23. The AXIS Policy is an excess liability insurance policy that follows-form to and affords coverage in excess of the Scottsdale Policy. The insurance provided by the AXIS Policy applies in conformance with the provisions of the Scottsdale Policy. A true and correct copy of the AXIS Policy is attached as Exhibit B and incorporated herein by reference.

24. Plaintiffs have fully complied with all conditions precedent and other requirements for insurance coverage under the AXIS Policy.

## FACTUAL BACKGROUND

### The Benowitz Lawsuit

25. On or about March 22, 2012, plaintiffs, Ari Benowitz, Carrie Benowitz, B.A. Benowitz as trustee of the B.A. and Nanette Benowitz Trust, dated January 24, 1985 and Amended October 4, 1991 and March 29, 2006, filed a lawsuit against defendants, Highwinds, Highwinds Network Group, Inc., Miller, and DOES 1-25, in the Superior Court of the State of California, County of Orange, Central Justice Center, as case no. 30-2012-00556409-CU-CO-CJC, consolidated with Case No. 30-2013-00628459 (the "Benowitz Lawsuit"). A true and accurate copy of the Third Amended Complaint filed in the Benowitz Lawsuit is attached hereto as Exhibit C and incorporated herein by this reference.

26. The Benowitz Lawsuit is a Claim against each of the Plaintiffs as defined in the Scottsdale Policy and for purposes of the AXIS Policy, and as such is referred to herein as a "Claim."

27. Scottsdale and AXIS were timely notified of the Benowitz Lawsuit in accordance with the terms of each of the respective policies.

### **Reservations of Rights**

28.     On July 16, 2012, Scottsdale issued a reservation of rights letter (the "Scottsdale ROR Letter").

29.     In the Scottsdale ROR Letter, Scottsdale did not admit insurance coverage for any of the Claims asserted against any or all of the Plaintiffs, and expressly reserved all rights and defenses under the Scottsdale Policy, at law or otherwise, whether or not specifically referenced therein.

30.     On November 6, 2012, and August 3, 2015, AXIS issued reservation of rights letters (the "AXIS ROR Letters").

31.     In the AXIS ROR Letters, AXIS adopted each reservation taken by Scottsdale in its coverage correspondence.

### **Scottsdale's Refusal to Pay for Plaintiffs' Choice of Counsel**

32.     In the Scottsdale ROR Letter, Scottsdale acknowledged that it had a duty to defend the Claims against the Plaintiffs.

33.     Scottsdale rejected Plaintiffs' choice of counsel, and unilaterally retained its own choice of counsel, Dentons US LLP, over Plaintiffs' objection.

34.     Plaintiffs advised Scottsdale that Dentons US LLP was not, and is not, agreeable to Plaintiffs.

35.     Scottsdale has breached its duty to defend Plaintiffs by appointing attorneys of Dentons US LLP in Kansas City, Missouri, to defend Plaintiffs in the Benowitz Lawsuit in Orange County, California, which attorneys improperly disclosed in the Benowitz Lawsuit privileged documents as a result of inadequate supervision of "contract lawyers."  As a result of

these facts and others, Dentons US LLP has failed to provide effective representation to Plaintiffs in the Benowitz Lawsuit.

36. Scottsdale's payments to Dentons US LLP have eroded the applicable limits of liability under the Scottsdale Policy in an amount in excess of $75,000.

37. Instead of Dentons US LLP, Plaintiffs have requested that Scottsdale pay or reimburse them for their independent legal counsel as a covered "Loss" or "Costs, Charges, and Expenses" or otherwise under the Scottsdale Policy. Scottsdale has refused to pay or reimburse Plaintiffs for their independent legal counsel as a covered "Loss" or "Costs, Charges, and Expenses" or otherwise under the Scottsdale Policy.

38. Plaintiffs have been forced to retain their own attorneys, referred to herein as "Plaintiffs' Choice of Counsel," to defend Plaintiffs against the respective Claims alleged against them. While Scottsdale has turned over the defense of the Benowitz Lawsuit to Plaintiffs' Choice of Counsel, Scottsdale initially refused to consent to the retention of any or all of Plaintiffs' Choice of Counsel, and refused and continues to refuse to pay for Plaintiffs' Choice of Counsel, or recognize that the legal costs, charges, fees and expenses incurred by Plaintiffs from Plaintiffs' Choice of Counsel are either a covered "Loss" or "Costs, Charges, and Expenses" or otherwise payable under the Scottsdale Policy.

39. At all relevant times herein, Plaintiffs have fulfilled any obligation they had to cooperate with Scottsdale in defense of the Claims.

40. To date, Plaintiffs have incurred in excess of $75,000 in payment of unreimbursed attorneys' fees, costs, and expenses to Plaintiffs' Choice of Counsel for their defense of their respective Claims in the Benowitz Lawsuit, which Scottsdale refuses to pay.

41.     Meanwhile, Dentons US LLP has received over $75,000 in attorneys' fees from Scottsdale which Scottsdale has improperly charged against the limits of liability under the Scottsdale Policy.

## COUNT FOR DECLARATORY JUDGMENT

42.     Plaintiffs incorporate by reference paragraphs 1-41 above.

43.     Plaintiffs have retained the undersigned counsel to represent them in this action, and have agreed to pay counsel a reasonable fee for their services.

44.     All conditions precedent to the institution of this action have been performed, have occurred or have been waived.

45.     The declaratory relief sought in this action involves a real, actual, justiciable, and present case and controversy for the reasons set forth above, as well as others regarding the terms, provisions, conditions and exclusions of the Scottsdale Policy and the AXIS Policy, and the parties are in need for immediate determination of their rights and obligations under the Scottsdale Policy and the AXIS Policy.

46.     The parties are in doubt as to their rights and obligations under the Scottsdale Policy and the AXIS Policy, and this action does not constitute mere legal advice.

47.     There is also an actual and justiciable controversy between Plaintiffs and Scottsdale in this case regarding Scottsdale's refusal to honor its contractual obligations to pay, reimburse, or advance defense fees and costs to Plaintiffs for Plaintiffs' Choice of Counsel.

48.     There is also an actual and justiciable controversy between Plaintiffs and Scottsdale in this case regarding Scottsdale's unilateral retention of Dentons US LLP.

49.     There is also an actual and justiciable controversy between Plaintiffs and Scottsdale and between Plaintiffs and AXIS in this case regarding Scottsdale's and AXIS's

refusal to honor their respective contractual obligations to provide indemnity coverage of the Claims.

50. A declaratory judgment will resolve the actual and justiciable controversies between the parties, declare their rights and obligations under the Scottsdale Policy and under the AXIS Policy which are now in controversy, and will alleviate the uncertainty currently facing Plaintiffs with respect to indemnity coverage for the Claims and defense costs and expenses that Plaintiffs have incurred and will continue to incur as a result of each of their respective Claims.

51. The Court should make the following declarations concerning Scottsdale and the Scottsdale Policy:

    a. Declaring that Florida law governs the Scottsdale Policy;

    b. Declaring that Scottsdale had no right to withhold its consent to Plaintiffs' retention of Plaintiffs' Choice of Counsel;

    c. Declaring that Scottsdale is obligated to pay or reimburse Plaintiffs for Plaintiffs' costs and expenses that they have paid to or incurred from Plaintiffs' Choice of Counsel, and that Scottsdale should continue to pay for Plaintiffs' costs and expenses of Plaintiffs' Choice of Counsel in defending against the Benowitz Lawsuit;

    d. Declaring that payments made to Dentons US LLP by Scottsdale under the Scottsdale Policy should not be charged against or reduce the limits of liability available under the Scottsdale Policy;

    e. Declaring that any or all of the Claims in the Benowitz Lawsuit constitute a "Loss" under the EP Coverage Section of the Scottsdale Policy;

    f.  Declaring that any or all of the Claims in the Benowitz Lawsuit constitute a "Loss" under the MIC Coverage Section of the Scottsdale Policy; and

    g.  With respect to any coverage defenses or exclusions raised by Scottsdale with respect to the Scottsdale Policy, declaring that they do not bar indemnity coverage of or prevent settlement of the Claims under the Scottsdale Policy.

  52.  The Court should make the following declarations concerning AXIS and the AXIS Policy:

    a.  Declaring that Florida law governs the AXIS Policy;

    b.  Declaring that any or all of the Claims in the Benowitz Lawsuit constitute a "Loss" under the EP Coverage Section for purposes of the AXIS Policy;

    c.  Declaring that any or all of the Claims in the Benowitz Lawsuit constitute a "Loss" under the MIC Coverage Section for purposes of the AXIS Policy; and

    d.  With respect to any coverage defenses or exclusions raised by AXIS with respect to the AXIS Policy, declaring that they do not bar indemnity coverage of or prevent settlement of the Claims under the AXIS Policy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that: (1) Judgment be entered declaring the matters set forth in Paragraphs 51 and 52 above; (2) Plaintiffs be awarded attorneys' fees and other expenses incurred in bringing and prosecuting this action pursuant to any applicable contract, statute, or other law; (3) Plaintiffs be awarded pre- and post-judgment interest; and (4) Plaintiffs be awarded any further relief as the Court deems equitable and just.

Dated: September 2, 2015

Respectfully Submitted,

**Charles E. Muller, II**
Florida Bar No. 239356
Charles@mlcounsel.com
**Brian A. Lebensburger**
Florida Bar No. 0114601
Brian@mlcounsel.com
MULLER LEBENSBURGER &
SCHWARTZ, P.A.
7385 Galloway Road, Suite 200
Miami, FL 33173
(305) 670-6770
(305) 670-6769 *facsimile*

*and*

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, 30th Floor
Miami, FL 33131
(305) 577-3996
(305) 577 3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**
Florida Bar No. 79170
smarino@vpl-law.com
*Counsel for Plaintiffs*